# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN A. NORRIS, *et al.*, | ) |
| Plaintiffs, | ) Civil Action No. 17-229 |
| v. | ) Judge Cathy Bissoon |
| UNIVERSITY OF PITTSBURGH, *et al.*, | ) |
| Defendants. | ) |

## ORDER

For the reasons that follow, Plaintiffs' Motion to Remand (Doc. 18) will be denied, and Defendant the University of Pittsburgh's ("Pitt's") Motion to Dismiss (Doc. 5) will be granted, to the extent described herein. In short, Plaintiffs lack standing to assert challenges regarding patent-inventorship, and those are the only claims warranting an exercise of federal subject-matter jurisdiction. Given the Court's conclusion that Plaintiffs lack standing regarding inventorship, what remains of the case will be remanded to state court. The other Defendants' Motions to Dismiss (Docs. 10 & 13) will be denied as moot, as will Plaintiffs' Motion (Doc. 42) for leave to file a reply brief in support of remand. Finally, Plaintiffs' Motion (Doc. 48) for sanctions against Defendants Kolls and Zheng will be denied.

The parties and counsel are, by this point, well aware of the circumstances and allegations leading to this action, and the Court writes for their benefit only. Plaintiffs initiated this lawsuit in state court, asserting claims for declaratory relief, the misappropriation of trade secrets pursuant to state statutory- and common-law, breach of contract and unjust enrichment.

*See* Compl. (Doc. 1-2). In essence, Plaintiffs accuse Defendants of stealing their intellectual property and depriving them of the financial-benefit thereof. *Id.*

Unlike the last time Plaintiffs brought suit, proceedings before the USPTO finally have come to a close. *Cf.* Pitt's Br. (Doc. 6) at 2 n.1. As it stands, Plaintiffs are named as the applicants and inventors of United States Patent No. 9,181,538 (*see* Doc. 1-2 at pg. 289 of 361); and Pitt is named as an applicant, and assignee, of United States Patent No. 9,580,704, for which Plaintiffs and Drs. Kolls and Zheng are identified as co-inventors (*see* Doc. 6-1).[1] Plaintiffs claim to be the *sole* inventors of the intellectual property reflected in the patents, and they seek judicial declarations to that effect. *See* Compl. at Count I, ¶¶ 112, 114 ("Plaintiffs are the true and sole inventors of the Pneumocystis vaccine," and "Dr[s]. Kolls and Zheng did not invent the Pneumocystis vaccine").

Plaintiffs' request for judicial declarations regarding patent-inventorship made their state-court action removable. HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co., Ltd., 600 F.3d 1347, 1353 (Fed. Cir. 2010) ("the field of federal patent law preempts any state law that purports to define rights based on inventorship") (citation to quoted source omitted); *accord* Ali v. Carnegie Inst. of Wash., 684 Fed. Appx. 985, 995 (Fed. Cir. Apr. 12, 2017) (Dyk, J., concurring) ("federal law ousts state courts of jurisdiction over inventorship claims," for which "[n]o State court shall have jurisdiction") (citation to quoted and other sources omitted). Plaintiffs' insistence that they seek relief only under state law does not make it so, and the Court incorporates-by-reference the

---

[1] Although Defendant-LSU also is listed as an applicant and assignee of Patent '704, a discussion of the disputes between Plaintiffs and Pitt is sufficient for the purposes of the analyses herein. Along the same lines, the Court, hereafter, will refer to Pitt as "Defendant," while recognizing that there are, of course, other Defendants.

2

recounting of averments and legal standards in Defendant's briefing. *See* Doc. 39 at 5-10.[2]

Defendant also is correct that unanimity-of-removal is not required. Preston v. Nagel, 166 F. Supp.3d 92, 97–98 (D. Mass. 2016) (removal pursuant to 28 U.S.C. § 1338 is analyzed under 28 U.S.C. § 1454, which provides that "any party" may remove, thereby allowing removal by "fewer than all defendants"), *appeal dismissed*, 857 F.3d 1382 (Fed. Cir. 2017) (acknowledging, and failing to disturb, district court's rulings as relates to the "any party" language in Section 1454).

Under the circumstances, Defendant was entitled to remove this case to federal court, and Plaintiffs' Motion to Remand is unfounded. As fate would have it, though, a remand nevertheless is warranted based on Plaintiffs' lack of standing to challenge inventorship.

Defendant seeks dismissal of Plaintiffs' claims based on an assignment agreement executed by them in September 2012. *See* Doc. 7-1. The agreement addresses the "Recombinant Pneumocystis Vaccine" addressed in the Complaint, and, by Plaintiffs' own admission, "[t]he introduction section . . . contains a summary of the KEX vaccine described in . . . the patent filings at issue in this lawsuit." Doc. 1-2 at ¶ 96 (on pg. 21 of 361). After a detailed recitation of the intellectual property, the agreement states that the Plaintiff-signatories "hereby sell, assign and transfer" to Defendant "[their] entire right, title and interest

---

[2] In adopting Defendant's reasoning, the Court states no opinion regarding whether "the inventorship issue is essential to the resolution" of Plaintiffs' non-declaratory claims (*i.e.*, misappropriation of trade secrets, breach of contract and unjust enrichment). *See* HIF Bio at 1354-55 (state-law claims supportable by "alternative, non-patent theor[ies]" are not removable). While some, or all, of Plaintiffs' alternative theories may be precluded by this Court's rulings herein, the extent to which any residual state-law claims may proceed is for the state court to decide. *Cf.* Larson v. Correct Craft, Inc., 569 F.3d 1319, 1325-26 (Fed. Cir. 2009) ("[i]f the jurisdiction-conferring patent claim is dismissed for lack of standing, the district court cannot exercise supplemental jurisdiction over surviving state-law claims because there was never an Article III case or controversy") (citations omitted).

3

". . . in[,] and to[,] any and all inventions, developments and improvements . . . which are disclosed herein." Doc. 7-1 at pg. 9.

Although counsel do not expressly address the issue, every indication is that the assignment-agreement was recorded with the USPTO. Patent '704 identifies Pitt as both the patent-applicant and assignee, Doc. 6-1, and the Complaint expressly avers that the agreement was submitted to the PTO in support of the assignment. *See* Doc. 1-2 at ¶ 86. The public record, of which the Court may take judicial notice, confirms the recordation. *See* webpage at "https://assignment.uspto.gov/patent/index.html#/patent/search", results for Patent '704 (indicating that assignment between Plaintiffs and Defendant, executed in September 2012, was recorded on March 11, 2014). This is significant because the recording of an assignment with the PTO "creates a presumption of validity . . . and places the burden to rebut such a showing on one challenging the assignment." SiRF Tech., Inc. v. Int'l Trade Com'n, 601 F.3d 1319, 1328 (Fed. Cir. 2010); *accord* Mayfair Wireless LLC v. Celico P'ship, 2013 WL 4657507, *4 (D. Del. Aug. 30, 2013) (citing SiRF Tech, and congruent provisions in the MPEP and CFRs).

Plaintiffs have not come close to overcoming the presumption of validity. Although the Complaint makes conclusory reference to the efficacy-of-assignment standards established in *Stanford v. Roche*, their counsel make no meaningful arguments under those standards. Rather, they challenge the scope of the assignment. Plaintiffs maintain that the assignment-agreement related to "a vaccine delivery method," not the KEX1 vaccine reflected in the patent(s), and that the delivery method could well be used for any number of "other vaccines." *See* Pls.' Opp'n (Doc. 30) at 6-7. Strangely, the phrases "delivery method" and "other vaccines" appear nowhere in the technology description or the assignment language.

No matter, though, because indulgences regarding Plaintiffs' subjective intentions and understandings have no place in the interpretation of clear and unambiguous contract provisions.

The language of the assignment-agreement is clear, and its scope exceptionally broad. In executing the agreement, Plaintiffs assigned to Defendant their "entire right, title and interest" in "any and all inventions, developments and improvements" as relates to the intellectual property disclosed therein. *See* discussion *supra*. While Plaintiffs may hope that their contrary intentions and understandings have bearing, the law dictates not.

The Court's interpretation of the assignment-agreement is controlled by state law. *Compare* Def.'s Br. (Doc. 6) at 7 n.3 (relying on Pennsylvania law) *with* Larson v. Correct Craft, Inc., 569 F.3d 1319, 1327 (Fed. Cir. 2009) ("questions of patent ownership are determined by state law"); *accord* Intellectual Ventures I LLC v. Erie Indem. Co., 850 F.3d 1315, 1320 (Fed. Cir. 2017) (except for unique issues not presented here, "contractual disputes and interpretations of the parties' patent assignment agreements" are resolved under state law). For a written contract, the Court first must look to the writing itself to ascertain the intent of the parties. Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d 462, 468 (Pa. 2006). If the contractual provision(s) in question are clear and unambiguous, the Court is required to give effect to the language. Good v. Frankie & Eddie's Hanover Inn, − A.2d −, 2017 WL 4172926 (Pa. Super. Sept. 21, 2017) (citation to quoted source omitted); *accord* Ins. Adjustment Bureau at 468. Unambiguous contracts are interpreted as a matter of law, without resort to parol evidence. Jadic v. Bertolet Const. Corp., 2015 WL 7186481, *2 (Pa. Super. Nov. 16, 2015) ("only when . . . contractual language is unclear or ambiguous [is] a party . . . permitted to introduce parol evidence to ascertain the parties' intent"). "A court must not distort the meaning

5

of the language or resort to a strained contrivance in order to find an ambiguity."
Good (page numbers pending).

In this case, Plaintiffs expressly aver that the assignment-agreement "contain[ed] a summary" of the intellectual-property in question, *see* Doc. 1-2 at ¶ 96; and, by the plain terms of the agreement, Plaintiffs assigned to Defendant their rights in "any and all inventions, developments and improvements" regarding the same. Doc. 7-1 at pg. 9. While their positions certainly are not helped by the fact that their proposed alternative-understanding − as relates to a "delivery method" for "other vaccines" − finds no support in the writing, this serves only to emphasize the Court's inevitable conclusion: the relevant provisions of the assignment-agreement are clear and unambiguous.[3] Plaintiffs cannot overcome the presumption of validity attached to the recorded assignment, and Defendant's arguments are well-taken.[4]

The consequences of this determination, however, are somewhat different than envisioned by Defendant. The Court of Appeals for the Federal Circuit's decision in Larson, relied upon by defense counsel, dictates that Plaintiffs' lack of ownership in the assigned-property defeats Article III-standing. *Id.*, 569 F.3d at 1325-27; *cf. also* Def.'s Br. (Doc. 6) at 4,

---

[3] Plaintiffs' argument that the Court may not, at this stage, properly examine the assignment-agreement is summarily denied. *Cf.* Pls.' Opp'n (Doc. 30) at 15-17 (arguing that agreement is "extrinsic evidence" that cannot now be considered). The agreement is discussed *at length* in the Complaint, Doc. 1-2 at ¶¶ 86-103, and Plaintiffs cannot avoid the Court's consideration by merely declining to attach it to their pleadings. Along the same lines, Plaintiffs cannot avoid the Court's instant rulings − whether under the present procedural posture, or by way of a putative conversion to summary judgment − because they cannot demonstrate how discovery may alter the Court's determination. Given that the agreement is clear and unambiguous, no amount of parol evidence can salvage Plaintiffs' position.

[4] Even had Plaintiffs made sufficient proofs to overcome the presumption of validity, the Court's analyses would lead to the same conclusion.

8-9 ("Plaintiffs lack standing to assert their Ownership Claims").[5] The Larson Court held that, "if the jurisdiction-conferring patent claim is dismissed for lack of standing, <u>the district court cannot exercise supplemental jurisdiction over surviving state-law claims because there was never an Article III case or controversy</u>." *Id.* at 1325-26 (emphasis added).

Given that Plaintiffs lack standing regarding any claim potentially forming the basis for federal subject-matter jurisdiction, Larson directs that whatever remains of the case must be remanded to state court. *Id.* at 1328 (vacating judgment of district court with instruction that case be remanded to state court). While Defendant(s) surely would prefer that this tribunal parse Plaintiffs' non-declaratory claims for relief, to determine whether or not any may persist, the Court does not believe that forays into heavily state-law-dependent theories, here, is consistent with the teachings of Larson. At least some of Plaintiffs' remaining claims conceivably may proceed absent their claims of ownership;[6] and the Larson ruling makes abundantly clear that this Court is without supplemental jurisdiction over any surviving state-law claim(s). *Id.* at 1325-26. Even if supplemental jurisdiction were available, moreover, the Court

---

[5] To be clear, Plaintiffs do not state claims for reputational injury. *Compare* Compl. (focusing on economic/monetary damages, and failing to reference Plaintiffs' reputations anywhere in the pleadings) *with* Shukh v. Seagate Tech., LLC, 803 F.3d 659, 663 (Fed. Cir. 2015) (holding that concrete and particularized reputational injury can give rise to Article III standing).
The deficiencies in Plaintiffs' pleadings cannot properly be cured by amendment, and any "11th hour" request to add claims for reputational-injury, a legal theory raised (and distinguished) in the first instance by the Court, and <u>never</u> by Plaintiffs' counsel, would not be in good-faith. *Cf. generally* Imblum v. Code Corp., 2017 WL 3594569, *2 (S.D. Cal. Aug. 21, 2017) ("[a] moving party's failure to justify the delay in seeking leave to amend the complaint to assert an entirely new theory of liability . . . inconsistent with the original complaint" provides grounds for denying request for amendment) (citation to quoted source omitted).

[6] *Cf.* Compl. at Count IV (alleging breach of contract against Pitt, based on its purported agreement "to properly investigate the actions of [Defendants] Kolls and Zheng, [and] hold [them] accountable for their misconduct"). The Court states no opinion regarding the viability of Plaintiffs' breach-of-contract theory and merely concludes that that determination properly is reserved for the state court.

7

sees no reason, based on the information available, to exercise it. *See* MD Matrix Health, L.L.C. v. Kasle, 2012 WL 6161941, *4 (E.D. Tex. Nov. 5, 2012) (finding same); *see also generally* Norris v. Univ. of Pittsburgh, 2014 WL 6982465, *2 (W.D. Pa. Dec. 10, 2014) (before court will exercise supplemental jurisdiction, proponent must demonstrate "extraordinary circumstances" warranting same) (citing and quoting Bright v. Westmoreland County, 380 F.3d 729, 751 (3d Cir.2004)).[7]

In light of the foregoing, the Motions to dismiss by Defendants Kolls, Zheng and LSU are moot. The same is true of Plaintiffs' Motion for leave to file a reply in support of remand. Doc. 42. Plaintiffs' proposed reply would address various statements from the Defendants, and counterstatements by Plaintiffs, regarding who invented what (*i.e.*, the Plaintiffs versus Drs. Kolls and Zheng), and such matters have nothing whatever to do with the legally-proper removal of this case to federal court. Finally, Plaintiffs' Motion for sanctions against Defendants Kolls and Zheng will be denied. Again, Plaintiffs take issue with certain statements and litigation-positions adopted by those Defendants, as relates to ownership. *See generally* Doc. 48. Having reviewed Defendants' detailed-responsive materials, the Court cannot agree that Defendants' positions lack good-faith bases, under the objective reasonableness standard.

---

[7] To be sure, this Court held, in the parties' prior litigation, that "considerations of judicial economy, convenience and fairness dictate that Plaintiffs' state-law claims be adjudicated in conjunction with their putative federal claims." *Id.* Now that the Court definitively has held that Plaintiffs lack standing to bring federal claims, however, the decision runs in the opposite direction. A remand makes even more sense given that Plaintiffs may, or should have, considered seeking a rescission of the assignment-agreement in state-court, an approach, quite frankly, that would appear (however remotely) to have a greater likelihood of success than the current formulation. Nolen v. Lufkin Indus., Inc., 2012 WL 1380424, *3 (Fed. Cir. Feb. 1, 2012) ("if a plaintiff does not own a patent absent judicial intervention voiding a patent assignment," state court, not federal, is "the place to seek . . . initial judicial intervention") (citing and quoting Jim Arnold Corp. v. Hydrotech Sys., Inc., 109 F.3d 1567, 1572 (Fed. Cir. 1997)); *accord* Larson at 1326-27 (plaintiff's "only path to financial reward . . . involves him first succeeding on his state-law claims and obtaining rescission of the patent assignments").

Questions of judgment, aside, regarding the picking of ones' battles, the matter of sanctions is the reddest of herrings as relates to the dispositive issues identified above.

For all of these reasons, the Court hereby ORDERS that: Plaintiffs' Motion to Remand (**Doc. 18**) is **DENIED**; Defendant the University of Pittsburgh's Motion to Dismiss (**Doc. 5**) is **GRANTED**, to the extent described above; the other Defendants' Motions to Dismiss (**Docs. 10 & 13**), and Plaintiffs' Motion (**Doc. 42**) for leave to file a reply in support of remand, are **DENIED AS MOOT**; Plaintiffs' Motion (Doc. 48) for sanctions is **DENIED**; and this case is **REMANDED FORTHWITH** to the Court of Common Pleas of Allegheny County, Pennsylvania (Civil Division, Case No. GD-16-011837).

IT IS SO ORDERED.


September 25, 2017           s\Cathy Bissoon
Cathy Bissoon
United States District Judge

cc (via ECF email notification):

All Counsel of Record